STATE OF NEW JERSEY, PLAINTIFF, v. JEFFREY DIEF-
FENBACH AND KENNETH DIEFFENBACH, DEFEND-
ANTS.

Superior Court of New Jersey
Law Division
(Criminal)

Decided November 25, 1975.

532

*Mr. James Waldron* for the State (*Mr. John Corino,* Prosecutor of Cape May County, attorney).

*Mr. John Callinan* for defendants (*Messrs Perskie & Callihan,* attorneys).

*Mr. L. Kent Wyatt,* of the Deputy Attorney General's Office of Delaware, *pro hoc vice.*

STALLER, J. C. C., Temporarily Assigned. Defendants moved to dismiss two extradition warrants on grounds of delay which it is alleged, violates these constitutional rights under the Sixth Amendment.

On June 14, 1973 Kenneth and Jeffrey Dieffenbach were indicted in the State of Delaware on four counts of conspiracy, along with 23 others on identical or related charges. On August 2, 1973 Governor Cahill signed extradition warrants for them at the request of the Governor of Delaware. They refused to waive extradition and a hearing was scheduled for October 25, 1973. This hearing was postponed because of an error in the rendition papers, which were recalled and replaced by proper ones. (The original papers had alleged that movants were fugitives from Delaware, while in fact jurisdiction was based on telephone conversations between New Jersey and Delaware alleged to constitute criminal acts under the laws of Delaware.) Amended extradition warrants were signed by Governor Cahill on October 29, 1973 pursuant to *N. J. S. A.* 2A:160–11, 14, and the Dieffenbachs continued to resist extradition. No hearing was scheduled on the amended warrants until this motion was made in November 1975. However, the case has not yet come to trial in Delaware, no doubt due to the complexity of problems of prosecuting a case with many defendants and many wiretap transcripts. Although the Dieffenbachs had never submitted themselves to Delaware's jurisdiction, they appeared by Sidney Balick, an attorney in Delaware, who also represented William Bell, a codefendant. Balick appeared on behalf of movants at sessions where tape recordings of wiretaps were played, received transcripts of wiretaps for them and was informed of pretrial conferences.

The first issue is whether the protections of the Sixth Amendment against undue delay in being brought to trial apply to extradition proceedings. It has been said that in an extradition hearing the only things that may be inquired into are whether the person sought to be extradited is the person named and whether he is a fugitive from justice — and not

constitutional questions. *In re Cohen,* 23 *N. J. Super.* 209, 218 (App. Div. 1952). See *Sweeney v. Woodall,* 344 *U. S.* 86, 73 S. Ct. 139, 97 L. Ed. 114 (1952). However, it would seem that the protections of the Sixth Amendment are as applicable to delays arising from extradition proceedings as from any other source of delays. The purposes of that guarantee have been stated to be: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker v. Wingo,* 407 *U. S.* 514, 532, 92 S. Ct. 2182, 2193, 33 L. Ed. 2d 101 (1972). All of these evils may occur as much from delay in extradition proceedings as from delay in being brought to trial. (Although movants here have made bail, the Supreme Court did not limit the protections of the Sixth Amendment to cases where the accused was incarcerated prior to trial. *Barker v. Wingo, supra* at 533, 92 S. Ct. 2182; also concurring opinion of Justices White and Brennan at 537).

This question of the applicability of the guarantee of speedy trial to extradition proceedings has not been squarely faced in this State. However, in *Shoemaker v. Sheriff of Carroll County,* 258 Md. 129, 265 *A.* 2d 260 (1970), the Maryland Court of Appeals was faced with this question. Although it refused to consider petitioner's claim of denial of a speedy trial, as it felt this was a matter for the courts in Pennsylvania, the demanding state, the court did consider whether the delay was prejudicial to petitioner's ability to resist extradition. Though it did not indicate that it was applying the standards of the Sixth Amendment, in effect it did just that.

The case here for introducing constitutional consideration into extradition proceedings is strengthened by the fact that, at least technically, the delay has been occasioned by action or inaction in New Jersey, the asylum state, and is thus appropriate for New Jersey courts to consider, unlike the more frequent allegation of unconstitutional action in the demanding state. *Cf. Sweeney v. Woodall, supra.*

■■ The second issue is the test to be applied. As mentioned before, a determination of whether there has been undue delay in extradition proceedings is separate from and independent of a determination of undue delay in being brought to trial, which is for the courts of the demanding state, Delaware, to consider. However, the same test is applicable in both situations. The test for determining whether the right to a speedy trial has been denied was set out by the Supreme Court in *Barker v. Wingo, supra.* The test is a balancing test, with four factors to be considered: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo, supra,* 407 *U. S.* at 530, 92 *S. Ct.* at 2192.

■■ In applying this test to extradition proceedings the most important factor is the last — whether there is prejudice to the accused's ability to resist extradition. Such hearings are limited to the questions of identity and jurisdiction. *In re Cohen, supra.* If the Dieffenbachs are not the persons who are sought in the indictment, their ability to prove that they are not has not been hampered by any delay. The other question, jurisdiction, is normally a question of whether the person is a fugitive from the demanding state. Here, however, Delaware's jurisdiction is allegedly based not on the Dieffenbachs' physical presence in Delaware but on acts committed in New Jersey, specifically, phone conversations between New Jersey and Delaware. The evidence that the State of Delaware has against the Dieffenbachs has in great part come from wiretaps on certain telephones in Delaware. All of the defendants in this case have been provided with copies of some transcripts of these calls and were able to listen to any of them. The Dieffenbachs have availed themselves of this opportunity, through Balick, their attorney. Under these circumstances it is hard to see how there could have been any prejudice to movants' ability to resist extradition proceedings; certainly, prejudice has not been demonstrated by them.

As to the length of the delay, it has been long, almost two years, but the court notes that the case has not yet come to trial in Delaware.

The reason for the delay is the understandable and excusable confusion on the part of the Delaware Attorney General's Office due to the apparent representation of the Dieffenbachs in Delaware by Balick.

Finally, the Dieffenbachs did not demand a speedy hearing until they sought this hearing for the purpose of dismissal. *Cf. State v. Szima,* 133 *N. J. Super.* 469, 473 (App. Div. 1975), where the court pointed out that the delay between the complaint and the indictment was totally out of defendant's control, since "as a practical matter defendant could hardly ask to be indicted." Here there was nothing to prevent movants' from demanding a speedy hearing.

Under the totality of the circumstances, the motion to dismiss the extradition warrants is denied. Hearing on the warrants for extradition will be held December 1, 1975 at 9:00 A.M.